FIRST NATIONAL BANK OF JOLIET, Plaintiff-Appellee, *v.* EDMUND J. CON-NESS *et al.*, Defendants.—(WILLIAM W. Low, d/b/a Bill Low Cattle Company, Defendant-Appellant.)

(No. 75-258;

Third District—November 28, 1975.

Singer, Murer & Kozlowski, Ltd., of Joliet, for appellant.

Wayne R. Johnson, of Herschbach, Tracy, Johnson, Bertani & Wilson, and Dunn, Stefanich, McGarry & Kennedy, Ltd., both of Joliet, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

On April 9, 1974, the circuit court entered summary judgment in favor of plaintiff and against defendant, William W. Low, d/b/a Bill Low Cattle Company, in the amount of $58,983.88 plus interest of $3,471.16. Since the cause involved multiple parties and causes, defendant Low's earlier appeal of that summary judgment order was dismissed on June 16, 1975. (*First National Bank v. Conness*, 29 Ill.App.3d 294, 330 N.E.2d 272 (3rd Dist. 1975).) After our dismissal, the circuit court, on application, made an express finding on June 23, 1975, pursuant to Supreme Court Rule 304(a) (Ill. Rev. Stat., ch. 110A, § 304(a)), that no just reason exists for delaying enforcement or appeal of its summary judgment order. Accordingly, we have allowed the record on appeal in the

earlier cause to be supplemented with the final order of June 23, and have taken the briefs filed in the earlier cause and the supplemented record for the briefs and records in this cause.

The complaint against Low alleges that plaintiff loaned $90,000 to Edmund and Gerald Conness in July, 1972, for the purchase of 300 head of feeder cattle; that Connesses purchased 206 head from Low in July for the sum of $60,400 paid from loan proceeds; that upon delivery these became collateral for the loan under the terms of a security agreement described in a perfected financing statement; that the Connesses thereafter without knowledge or consent of plaintiff wrongfully sold and delivered the same 206 head back to Low in October, 1972, for $58,983.33 in breach of the security agreement; that Connesses have never accounted to plaintiff for the sums paid them directly by Low; that Low wrongfully received and accepted delivery of the collateral and wrongfully transferred the same to others thereby converting the same to his own use; that plaintiff has made demand for payment and has been refused; and that Low is therefore liable to plaintiff for the value of the cattle on the date of conversion, with interest from the date of demand. (See Ill. Rev. Stat., ch. 26, § 9—307(1).) The allegations against the other defendants are set forth in our earlier opinion and need not be repeated here.

Plaintiff's motion for summary judgment was supported by an affidavit containing excerpts from the discovery depositions of Edmund Conness, William Low and Lucille Rogers. The full depositions and also those of two bank officers were also supplied. No counteraffidavits were filed until after the motion was allowed, and then only in support of defendant's motion to vacate, which the court denied. That counteraffidavit is mainly a legal argument outlining the points asserted in defendant's brief here.

Defendant's brief here argues as follows:

(1) that plaintiff could be found to have *waived* its right to proceed against defendant, as purchaser of the collateral, if there exists a genuine dispute on the factual question of whether plaintiff, by custom or other conduct, consented to the sale of the collateral by Connesses, and if the jury were to find in its favor on such issue; and

(2) plaintiff's right of recovery could be barred in whole or in part if the jury were to find

(a) that plaintiff accepted a *substitution* of security in the form of a second mortgage on the Connesses' farm, executed and delivered in June, 1973; or

(b) that after the loss was discovered Connesses made to plaintiff monthly *payments* on said loan of $1000.

The pleadings, depositions and admissions show no dispute about the fact that plaintiff had no knowledge of the sale of the collateral by Connesses to defendant until 6 months after it occurred; that plaintiff's financing statement was duly filed and perfected prior to this sale; that the security agreement authorized a sale of the collateral only upon prior written consent of plaintiff; that no consent was given by plaintiff at all; that this was the first cattle loan ever made by plaintiff to Connesses; that defendant, Low, admitted he had made no effort to look for filed financing statements even though he knew that "all cattle are mortgaged"; that the existing indebtedness on the secured note, even allowing for a credit for any monthly payments by Connesses, exceeds the value of the collateral which was $58,983.88; that Connesses deposited all the moneys it received from Low for the purchase of said collateral at another bank and have never accounted to plaintiff for such proceeds; that Low transferred the security to others and refused plaintiff's demand for payment. The record also shows no genuine dispute about the fact that any monthly payments made by Connesses to plaintiff, after the conversion of the collateral, was lawfully applied by plaintiff to other commercial loans owing it by Connesses. On its face the trust deed referred to by defendant as a second mortgage, and which is asserted to constitute a substitution of collateral, expressly recites "this indenture is not given in lieu of nor in substitution of any collateral security previously pledged by the * * * [Connesses] * * * but as additional security * * *." There, is therefore, no merit in the argument that plaintiff accepted a substitution of collateral. Moreover, no defense of waiver or payment or satisfaction and accord is pleaded as required by section 43(4) of the Civil Practice Act (Ill. Rev. Stat., ch. 110, § 43(4)).

After a review of the record, we determine that the pleadings, depositions and admissions on file show that there exists no genuine dispute as to any material fact and that plaintiff is entitled to summary judgment as a matter of law. Ill. Rev. Stat., ch. 110, § 57.

The judgment of the circuit court is affirmed.

ALLOY and STENGEL, JJ., concur.